# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

In the Matter of the Search of

(Name, address or brief description of person or property to be searched)

XXX XXXXXXX Street XX
Washington, D.C.

### APPLICATION AND AFFIDAVIT
### FOR SEARCH WARRANT

CASE NUMBER:

Special Agent Joshua C. Green, being duly sworn depose and say:

I am a Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives and have reason to believe that on the premises known as (name, description and or location)

XXX XXXXXXXXXXX STREET XX, WASHINGTON, D.C. (This location is described as a multi-story red brick duplex residence located on the xxxxx side of xxxxxxxxxx Street xxxxxxxx between xxx Street xxxxxxxxx and xxx xxxxxxxxxxx Avenue xxxxxxxxx, Washington, D.C.  To the immediate right of the front door the residence is marked "xxx" in gold colored numbers on a white background.  The front door is white in color with a brass colored mail slot and door knocker colored.  There is an outer glass door with white trim and a small grey colored front porch or step which leads to the front door.  The front yard has a black colored fence around it.)

in the District of Columbia, there is now concealed certain property, namely (describe the person or property)

### See Attachment A

Which are (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure) evidence and instrumentalities of alleged crime(s): In violation of Title 21, United States Code, Section 841(a)(1).

The facts to support the issuance of a Search Warrant are as follows:

See Affidavit which is incorporated herein for reference, continued on the attached sheet and made a part hereof.

_____
Joshua C. Green, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives
(Affiant)

Sworn to before me, and subscribed in my presence
_____ at Washington, D.C.

Date and Time Issued

_____          _____
Name and Title of Judicial Officer                                      Signature of Judicial Officer

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT FOR:**

**249 OGLETHORPE STREET NORTHEAST
WASHINGTON, D.C.**

**UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA**

---

AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT FOR 249 OGLETHORPE STREET NORTHEAST, WASHINGTON, D.C.  This location is described as a multi-story red brick duplex residence located on the south side of Oglethorpe Street Northeast between 3rd Street Northeast and New Hampshire Avenue Northeast, Washington, D.C.  To the immediate right of the front door the residence is marked "249" in gold colored numbers on a white background. The front door is white in color with a brass colored mail slot and door knocker.  There is an outer glass door with white trim and a small grey colored front porch or step which leads to the front door.  The front yard has a black colored fence around it.

Your affiant, Joshua C. Green, being duly sworn, does depose and state that:

1. Your affiant in this matter is Special Agent Joshua C. Green of the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF).  I am currently assigned to the Washington, D.C. area High Intensity Drug Trafficking Area (HIDTA) Task Force and I have been assigned to the HIDTA Task Force since becoming a Special Agent with the ATF in July of 2000. Prior to becoming an ATF Special Agent, I was a Special Agent with the former Immigration and Naturalization Service for over five years, the last three of which were in the Washington, D.C. area.  Since becoming a Special Agent with the ATF, I have taken part in numerous narcotics and firearms related investigations involving armed drug traffickers, armed gangs, felons in possession of firearms and ammunition, firearms trafficking, and the use of firearms in furtherance of illegal drug trafficking.  In addition, I have attended training related to narcotics and firearms at the Federal Law Enforcement Training Center in Glynco, Georgia and have received additional criminal investigation training, particularly related to illegal drug trafficking, offered by HIDTA.

2.  I have participated in the execution of over one hundred and fifty search warrants in the Washington, D.C. metropolitan area, which have resulted in the recovery of firearms and ammunition, illegal drugs and suspected drug packaging material, suspected drug paraphernalia, including, but not limited to, electronic digital scales, cooking equipment, various chemical additives associated with illegal drug production, and other items for drug usage.  In addition, these warrants have also led to the recovery of items such as shell casings, magazines, holsters, gun cases and safes, photographs of individuals with narcotics and firearms, large amounts of U.S. currency, records and documents associated

with drug trafficking, and documentary evidence indicative of ownership and/or control of a premises and/or vehicle.

3. During the course of your affiant's training and professional experience in the area of law enforcement, I have become familiar with narcotics and illegal drug-related crime in the Washington, D.C. metropolitan area and with the methods used to manufacture, package and to distribute controlled substances. This knowledge has in part been the result of being present during dozens of interviews of defendants, witnesses, confidential informants, police officers and other law enforcement officers. In addition to my participation in numerous search warrants as described above, I have also participated in the arrest of dozens of individuals in the Washington, D.C. metropolitan area for narcotics-related offenses. Based on this training and experience, I have learned that:

   A) It is common for narcotic traffickers to secrete illegal drugs in secure locations within residences, vehicles, businesses and other locations over which they maintain dominion and control, for ready access, and to conceal these items from law enforcement authorities. In addition, items and paraphernalia used to process or package illegal narcotics are often stored along with such secreted narcotics.

   B) It is common for individuals who sell narcotics to maintain in their residence large amounts of U.S. currency in order to maintain and finance their ongoing narcotic business. Other contraband proceeds of narcotics sales, such as jewelry and other valuables, may be stored in the residence along with currency. Additionally, your affiant knows that these same individuals keep receipts, bank statements, money drafts, letters of credit, money orders and cashier checks, bank checks, currency counting machines and other items related to the obtaining, secreting, transfer, or concealment of assets in the form of U.S. currency and other financial instruments.

   C) It is common for records of narcotic transactions and papers relating to the accumulation and disposition of assets (such as, but not limited to, books, ledgers, bank books and statements, and notes or logs) derived from narcotic trafficking to be stored by narcotic distributors in residences and/or vehicles. In addition, it is common for papers and documents related to the ownership, occupancy and/or control of the premises/vehicles to be stored within the premises and/or vehicles.

   D) It is common for people who sell illegal drugs to maintain addresses, telephone books, electronic paging devices, cellular telephones and other papers reflecting names, addresses, and/or telephone numbers of associates and co-conspirators. These items are frequently kept at the same location as the controlled substances. In addition, drug traffickers have photographs or video tapes of themselves and their associates in the drug trade, as well as property derived from the distribution of narcotics, and such items are often kept in their residence.

E) Participants in drug trafficking and other violent criminal activity often possess and maintain weapons and ammunition. Weapons are often stored in the subject's residences and/or vehicles for their protection and for the protection of their illegal narcotics and the assets generated from the sales of the illegal narcotics. Firearms are generally kept in secure locations to protect the items from theft and discovery by law enforcement authorities, thus reducing their exposure to criminal liability. In your affiant's experience, the recovery of weapons during the execution of search warrants is usually accompanied by the recovery of additional ammunition, magazines, bulletproof vests and documentary evidence indicative of ownership and possession of firearms.

4.  As this affidavit is being prepared for the limited purpose of obtaining a search warrant for the premises noted, it is not intended to include each and every fact observed by your affiant, other law enforcement officers, or known to the government. This affidavit is submitted with only those facts necessary to support probable cause for this application.

## SUMMARY OF INVESTIGATION

5.  For over the last three years members of the Washington, D.C. ATF-HIDTA Task Force have worked with a Confidential Informant, referred to in this affidavit as CI-1. CI-1 has participated in a number of controlled narcotics and firearms purchases and has provided reliable information regarding firearms, narcotics trafficking and other violent criminal activity to ATF and other law enforcement agencies. This information has led to the execution of numerous search warrants and the recovery of a large amount of illegal narcotics, firearms, ammunition, U.S. currency and other contraband. Further, the information that CI-1 has provided has been verified accurate by your affiant and other members of the ATF/HIDTA Task Force. No information provided by this source has ever been proven purposely incorrect or misleading.

6.  In 2005, your affiant received information from CI-1 regarding a subject known to the CI as a possible trafficker in illegal drugs in the Washington, D.C. metropolitan area. CI-1 described a residence, determined to be 249 Oglethorpe Street Northeast, Washington, D.C., as the location where this individual lives and deals in illegal drugs.

7.  Research was conducted by your affiant and I determined that the individual described by CI-1 as being involved in illegal drug trafficking could be Louis Augusto BEAMON. I obtained a driver's license photograph of Louis Augusto BEAMON and later showed the photograph to CI-1 who confirmed that BEAMON was indeed the subject the CI had described.

8.  I conducted a criminal record check and found that Louis Augusto BEAMON had a criminal history to include arrests in Washington, D.C. for Simple Assault, Threats, Possession of Marijuana and a violation of the Controlled Substance Act. In respect to the violation of the Controlled Substance Act, NCIC indicates that BEAMON was

arrested for this offense on April 8, 1991, was later convicted, and on December 13, 1991, was sentenced to sixty three months incarceration and four years supervised release. I confirmed this arrest and conviction by obtaining a certified copy of the Judgment in a Criminal Case from the United States District Court for the District of Columbia. After reviewing the Judgment, I found that BEAMON was found guilty of Unlawful Possession with Intent to Distribute 5 Grams or More of Cocaine Base and was indeed sentenced to sixty three months incarceration and four years supervised release.

9. During the course of the last five months, I have repeatedly conducted surveillance at 249 Oglethorpe Street Northeast, Washington, D.C. Parked in front of the location I have observed a Dodge Charger bearing Maryland registration tag A179592. This vehicle is registered to Louis Augusto BEAMON and Tionni Kernette Holloway at 5381 Quincy Street, Apartment T, Cheverly, Maryland. According to a Washington, D.C. government website, Tionni Holloway is the owner of 249 Oglethorpe Street Northeast, Washington, D.C. Louis BEAMON has claimed to live at the Cheverly, Maryland address in the past when arrested in Washington, D.C. I have observed this vehicle parked in front of the location on at least ten prior occasions in the last five months, the most recent time being during the early morning hours of June 10, 2008, and I have also observed an individual I believe to be Louis Augusto BEAMON driving this same vehicle as recently as on May 21, 2008.

10. On Tuesday, February 5, 2008, your affiant went to 249 Oglethorpe Street Northeast, Washington, D.C. in order to conduct surveillance and obtain discarded trash from the location. I had previously consulted the Washington, D.C. government website and determined that residential trash is collected in that neighborhood on Tuesdays. In an alley at the rear of the location, I found a trash can directly behind the residence out in the alley, off the curtilage and not behind any fence or enclosure. The other residences in the area also had trash cans put out in the alley in preparation for the morning's refuse collection. I obtained trash from the trash can located directly behind the residence and removed it away from the immediate area for closer inspection. The trash consisted of household garbage and contained mail matter addressed to 249 Oglethorpe Street Northeast, Washington, D.C. I also found two small ziplock bags of the type consistently used as drug packaging material. Lastly I found some green leafy substance, a portion of which I later field tested and received a positive reaction for marijuana.

11. On Tuesday, March 25, 2008, your affiant again went to 249 Oglethorpe Street Northeast, Washington, D.C. to obtain discarded trash from the location. Similar to the prior occasion, I found a trash can out in an alley at the rear of the location and directly behind the residence, off the curtilage, and not behind any fence or enclosure. The other residences in the area also had trash cans put out in the alley in preparation for the morning's refuse collection. In the trash can I found one bag of trash and removed it to a more secure location for a more thorough examination. Inside the trash bag, I found stalks of suspected marijuana and suspected drug packaging material consisting of a small red zip, two sandwich bags with possible marijuana residue and cigarette wrapping papers. A portion of the stalks of marijuana was field tested and found to have a positive color reaction for marijuana. The stalks of suspected marijuana likely are indicative of

marijuana trafficking in that they generally represent the discarded portions of unwanted marijuana thrown out when breaking down larger quantities of marijuana for packaging and resale. Mail matter addressed to Louis BEAMON was found in the trash along with the marijuana but addressed to him at his other known residence of 5381 Quincy Street, Apartment T, Cheverly, Maryland. Lastly, I found a paper currency band used to wrap a $5,000.00 bundle of currency and issued by Suntrust Bank and dated February 26, 2008. While this currency band is in itself not contraband or illegal, the presence of such an item may reflect the use or possession of large amounts of cash, the medium most often used by illegal drug traffickers to conduct their illicit business.

12. On Tuesday, April 8, 2008, your affiant again went to 249 Oglethorpe Street Northeast, Washington, D.C. to obtain discarded trash from the location. Similar to the prior occasions, I found a trash can out in an alley at the rear of the location and directly behind the residence, off the curtilage, and not behind any fence or enclosure. The other residences in the area also had trash cans put out in the alley in preparation for the morning's refuse collection. In the trash can I found bags of trash and removed them to a more secure location for a more thorough examination. Inside the trash bags, I found stalks and green leafy buds of suspected marijuana and suspected drug packaging material consisting of a small yellow zip and clear sandwich bags with possible marijuana residue. A portion of the stalks of marijuana was field tested and found to have a positive color reaction for marijuana. As noted before, the stalks of suspected marijuana likely are indicative of marijuana trafficking in that they generally represent the discarded portions of unwanted marijuana thrown out when breaking down larger quantities of marijuana for packaging and resale. I also located mail matter addressed to 249 Oglethorpe Street NE, Washington, D.C., in the trash.

13. On Tuesday, June 10, 2008, I again went to 249 Oglethorpe Street Northeast, Washington, D.C. to obtain discarded trash from the location. Similar to the prior occasions, I found a trash can out in an alley at the rear of the location and directly behind the residence, off the curtilage, and not behind any fence or enclosure. The other residences in the area also had trash cans put out in the alley in preparation for the morning's refuse collection. In the trash can I found bags of trash and removed three of them to a more secure location for a more thorough examination. Inside one of the trash bags, I found stalks and small green buds of suspected marijuana. A portion of the stalks of marijuana was field tested and found to have a positive color reaction for marijuana. I also located mail matter addressed to 249 Oglethorpe Street NE, Washington, D.C., in the same trash bag as the marijuana.

14. In summary, based on the information contained herein, your affiant believes that Louis Augusto BEAMON is utilizing **249 Oglethorpe Street Northeast, Washington, D.C.,** as a base to conduct and facilitate an illegal drug trafficking operation. Furthermore, based on the aforementioned investigation, your affiant's training, personal observations and experience, your affiant has probable cause to believe that this residence contains evidence, instrumentalities and fruits of the offense of Distribution of a Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1). Your affiant believes that probable cause exists that within **249 Oglethorpe Street Northeast,**

**Washington, D.C.** there is presently concealed illegal drugs, drug packaging material and paraphernalia, records, receipts, bank books and statements, notes and ledgers, address books, contact telephone numbers and names, cellular phones and/or digital paging devices, documents related to the ownership, occupancy and/or control of the premises, illegal weapons, as well as U.S. Currency and/or other proceeds of narcotic sales.  These items are listed more completely on a separate sheet included with this application and labeled "Attachment A".  I therefore respectfully request a search warrant be issued for the premises, curtilage, and locked boxes within the premises and curtilage, of **249 Oglethorpe Street Northeast, Washington, D.C.,** authorizing the seizure of the aforementioned items and any additional contraband discovered within.


_____
Joshua C. Green
Special Agent
Bureau of Alcohol, Tobacco, Firearms & Explosives


Sworn to and subscribed before me this _____ day of June, 2008.



_____
United States Magistrate Judge
District of Columbia

# ATTACHMENT A

## <u>List of Items to be Seized at Premises</u>

1. Illegal drugs to include, but not limited to, marijuana.

2. Paraphernalia for packaging, cutting, weighing and distributing illegal drugs, including but not limited to, scales, baggies, and cutting agents.

3. Firearms, firearm magazines, firearm attachments, ammunition, firearm parts and holsters as well as documentation of the purchase, storage, possession, disposition, dominion and control of firearms, including paperwork and receipts.

4. United States currency, precious metals, jewelry and financial instruments.

5. Books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchase and distribution of controlled substances.

6. Address and telephone books and papers reflecting names, addresses and telephone numbers.

7. Books, records, receipts, bank statements, and records, money drafts, letters of credit, money order and cashier's checks related to the obtaining, secreting, transfer, and concealment of assets and/or the expenditure of money.

8. Electronic equipment such as mobile telephones, telephone answering machines, telephone paging devices, and currency counting machines.

9. Photographs and/or video tapes, in particular, those photographs and/or video tapes of co-conspirators, assets, controlled substances, or of individuals with controlled substances and those that assist in identifying associates and conspirators.

10. Indicia of occupancy, residence, and ownership of the premises, including but not limited to, utility and telephone bills, mail matter, canceled envelopes, and keys.